UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL ANDREW KITCHEN-BEY,

        Plaintiff,                              Case No. 2:06-cv-251

v.                                                         Honorable Robert Holmes Bell

LEROY HOSKINS et al.,

        Defendants.
_____/

## AMENDED OPINION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Hoskins, Maceachern, Crysler, McCloud, Curtin, Louma, Pratt, Luetzow, Ezrow, Jondreau, Chappell, Yankovich, Kowalski, McKenzie, and Caruso for failure to state a claim; and further, will order service of the

complaint as to the First Amendment claim relating to the confiscation of religious material on Defendants Wade, Winn, Tremble, Loveless, Obiden and Perttu.

## Discussion

    I.    <u>Factual allegations</u>

Plaintiff is presently incarcerated at the Marquette Branch Prison (MBP). In his *pro se* complaint, he complains of events that occurred while he was housed at the Oaks Correctional Facility (ECF) and the Baraga Maximum Correctional Facility (AMF). He is suing the following twenty individuals: Leroy Hoskins, an inmate incarcerated at ECF; Patricia Caruso, Director of the Michigan Department of Corrections (MDOC); Kenneth Maceachern, Christopher Crysler, and Anthony McCloud, Regional Administrators for the MDOC; Cindi Curtin, ECF Warden; David Pratt, ECF Assistant Deputy Warden; (Unknown) Winn, ECF Acting Inspector; (Unknown) Kowalski, ECF Supervisor; (Unknown) Wade, ECF Correctional Officer; Tim Louma, AMF Warden; William Luetzow, AMF Assistant Deputy Warden; Daniel Ezrow, AMF Inspector; (Unknown) Jondreau and (Unknown) Perttu, respectively AMF Resident Unit Manager and Assistant Unit Manager; (Unknown) Chappel and (Unknown) Yankovich, AMF Shift Commanders; (Unknown) Obiden, AMF Supervisor; and (Unknown) Tremble, (Unknown) McKenzie, and (Unknown) Loveless, AMF Correctional Officers.

Plaintiff is a practicing Muslim, and while at ECF and AMF served as one of the religious leaders of branch temples of the Moorish Science Temple of America. Defendant Hoskins was a member of the branch temple at ECF, and acted as a confidential informant for the MDOC, reporting to Defendants Caruso, Curtin, Pratt, Winn or Kowalski. On May 7, 2005, Defendant Hoskins falsely claimed that Plaintiff and other prisoners were conspiring to carry out an armed

assault against three ECF prison guards. On May 10, 2005, Defendant Hoskins committed his allegations to writing, describing the prisoners' plan in more detail. Without investigating Defendant Hoskins' allegations, Defendant Kowalski placed Plaintiff in temporary segregation and issued a Notice of Intent (NOI) to confine Plaintiff indefinitely to administration segregation. An administrative hearing regarding the NOI was held on May 11, 2005. The hearing officer dismissed the charges, finding there was no evidence corroborating Defendant Hoskins' allegations. Immediately after the hearing, Defendant Maceachern ordered Plaintiff's transfer to the Ionia Maximum Facility. On May 20, 2005, Defendant Crysler filed a departure against Plaintiff based upon oral and written false accusations by Defendants Curtin, Pratt, Luetzow, Winn, and Kowalski that Plaintiff intended to assault prison staff. A departure allows prison officials to place a prisoner in maximum security even if the prisoner's security and management levels indicate he can be managed at a lower level facility.

As a result of the departure, on May 24, 2005, Plaintiff was transferred to AMF. The following day, Defendant McKenzie confiscated two photographs from Plaintiff's cell. One photograph was of a Muslim male standing in the prayer position, and the other of a prison-made weapon. The photographs were returned on August 3, 2005, after Plaintiff had filed a complaint.

On March 8, 2006, AMF officials requested that Plaintiff be transferred to a lower level facility. Defendant McCloud, however, filed another departure against Plaintiff based upon the same false allegations supporting the initial departure. On March 9, 2006, Plaintiff was transferred to MBP.

On May 7, 2005, after Plaintiff was placed in temporary administrative segregation at ECF, Defendant Wade searched Plaintiff's cell and confiscated Plaintiff's religious material, delivering the material to Defendant Winn. The religious material included the traditional Holy Qu'ran, the Holy Koran of the Moorish Science Temple of America, notes, research, correspondence and membership records between the religious leaders at various prisons, and stationary bearing Plaintiff's religious rank. On August 17, 2005, after Plaintiff filed a complaint regarding the confiscation, the religious material was returned.

On August 25, 2005, while Plaintiff was housed at AMF, Defendants Tremble, Obiden and Loveless subjected Plaintiff to a strip search, and confiscated all of Plaintiff's personal, religious and legal property, and all of the furnishings in his cell. Some of the items, including the Holy Koran, were returned within a few hours. Defendant Perittu held a hearing on September 20, 2005, regarding the remaining items and determined that these items would not be returned to Plaintiff.

Plaintiff claims Defendants violated his rights under the First, Fourth, Eighth and Fourteenth Amendments. For relief, Plaintiff seeks compensatory and punitive damages, and an order directing Defendants to replace all confiscated material.

II.     First Amendment-confiscation of religious material

Plaintiff alleges that the confiscation of his religious material on May 7, 2005 and August 25, 2005, violated his right to freely practice his religion. Although it is well established that prisoners retain their First Amendment right to exercise their religion, *see Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972), a prisoner's constitutional rights may be impinged by a prison regulation if the regulation "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78,

89 (1987). At this stage of the proceeding, it cannot be determine whether Defendants had a legitimate penological reason for confiscating Plaintiff's religious materials. Plaintiff allegations implicate Defendants Wade and Winn in the confiscation of religious materials on May 7, 2005 at ECF (Compl. at 13-14, dkt. #1), and Defendants Tremble, Obiden, Loveless, and Perttu in the confiscation of religious materials at AMF on August 25, 2005 (*Id.* at 15, 17).[1]

A plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of *respondeat superior* or vicarious liability. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (quoting *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978)). A claimed constitutional violation must be based upon active unconstitutional behavior. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). A supervisor's liability may not be based on the acts of one's subordinates nor upon the mere failure to act. *Id.*; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Because Plaintiff has failed to demonstrate that Defendants Hoskins, Maceachern, Crysler, McCloud, Curtin, Louma, Pratt, Luetzow, Ezrow, Jondreau, Chappell, Yankovich, Kowalski,

---

[1]Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A district court must enforce the exhaustion requirement sua sponte. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999). The burden to allege and show exhaustion belongs to Plaintiff. *See* 42 U.S.C. § 1997e(a); *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998). Plaintiff has attached to his complaint the Steps I, II and III grievances he filed concerning the confiscation of his religious property. *See* Ex. B to Compl., grievance no. ECF-0506-1198 concerning the May 2005 confiscation and naming Defendants Wade and Winn at Step I; Ex. D to Compl., grievance no. AMF-0508-2286, concerning the August 2005 confiscation and naming Defendants Tremble, Obiden, Loveless and Perttu at Step I; and Ex. E to Compl., grievance no. AMF-0602-00497 concerning the August 2005 confiscation and naming Defendant Perttu at Step I. Thus, Plaintiff has satisfied the exhaustion requirement with regard to these Defendants.

McKenzie, or Caruso actively engaged in the confiscation of his religious materials, he fails to state a claim against them.

### III. Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant Hoskins

On November 3, 2005, Plaintiff filed a case in this Court naming inmate Leroy Hoskins as a defendant. *See Kitchen-Bey v. Mich. Dep't of Corr.,* No. 2:05-cv-267 (W.D. Mich. 2005). Judgment in that case was entered on January 6, 2006 (dkt. #15), dismissing the complaint against Defendant Hoskins for failure to state a claim. Plaintiff's claims in the present case against Defendant Hoskins are barred by *res judicata.* Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits is an absolute bar to a subsequent action between the same parties or their privies based upon the same claims or causes of action. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir.1995). The doctrine applies when there is: (1) a final decision on the merits; (2) a subsequent action

between the same parties; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Kane*, 71 F.3d at 560. A dismissal for failure to state a claim is a judgment on the merits for *res judicata* purposes. *Guzowski v. Hartman*, 969 F.2d 211, 216 (6th Cir. 1992). In the present case, Plaintiff asserts the same claims, based upon the same alleged facts, against Defendant Hoskins that he brought in his earlier case. Accordingly, Plaintiff's claims against Defendant Hoskins are barred by *res judicata*, and must be dismissed.

### B. Fourteenth Amendment-due process

Plaintiff complains that, based upon Defendant Hoskins' false allegations, without receiving due process he was temporarily transferred to administrative segregation at ECF and later housed at maximum security prisons. A plaintiff bringing a procedural due process claim must show that he possessed a protected liberty or property interest, and that he was deprived of that interest without due process. *Hahn v. Star Bank,* 190 F.3d 708, 716 (6th Cir. 1999). The Supreme Court has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Imprisonment necessarily "carries with it the circumscription or loss of many significant rights." *Hudson v. Palmer*, 468 U.S. 517, 524 (1984). Accordingly, not every "action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause . . . ." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The

*Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *and see Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (stating that placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society."). It is clear that, under *Sandin*, Plaintiff does not have a liberty interest in remaining free from administrative segregation, and accordingly, was not due any process before being temporarily placed in administrative segregation.

Plaintiff's claim that he was transferred to a maximum security facility without due process also fails to state a claim. The Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228 (1976) ((holding that the Due Process Clause does not protect a duly convicted prisoner against transfer from one institution to another within the state prison system, and noting that the fact "[t]hat life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules"). Even the transfer to a maximum security facility with more burdensome conditions is "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum*, 427 U.S. at 225. The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Harbin-Bey v. Rutter,* 420 F.3d 571, 577 (6th Cir. 2005) (finding a prisoner's increase in security classification for his designation as a member of a security threat group failed to state a due process claim "because a prisoner has no constitutional right to a specific security classification"); *Cash v.*

*Reno*, No. 97-5220, 1997 WL 809982, at *2 (6th Cir. Dec. 23, 1997) (finding prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification). Generally, transfers to a more secure facility are simply the "ordinary incidents of prison life," which do not implicate an inmate's protected liberty interests. *See Sandin*, 515 U.S. at 484.

Plaintiff has failed to allege facts suggesting that his transfer to a maximum security facility imposes an atypical and significant hardship. Plaintiff's complaint is that being housed in a maximum security facility "prevents a prisoner's access to programs, privileges and amenities afforded to lower level prisoners, including, but not limited too [sic] those that are needed for prisoners to gain a parole." (Compl. at 11). Such concerns fail to rise to the level of a due process violation. Depriving a prisoner of mere privileges does not require the use of procedures that comply with due process. *Wolff v. McDonnell*, 418 U.S. 539, 571 n.19 (1974); *and see*, *Bazzetta v. McGinnis*, 430 F.3d 795, 802-05 (6th Cir. 2005) (holding that a ban on all visitation for inmates found guilty of two or more major misconduct charges was not an atypical and significant hardship in relation to ordinary incidents of prison life); *Tanney v Boles*, 400 F. Supp.2d 1027, 1040 (E.D. Mich. 2005) (finding inmates loss of telephone privileges for disciplinary reasons was not an atypical and significant hardship, even when the disciplinary charges were allegedly false). Plaintiff's allegations do not implicate a constitutionally protected right. "Where an interest is not a protected one, there is no cognizable harm to the individual when deprived of that interest." *Orr v. Hawk*, 156 F.3d 651, 654 (6th Cir. 1998), citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court recently held in *Wilkinson v. Austin*, 545 U.S. 209 (2005), that a prisoner's transfer to a "supermax" facility was sufficiently atypical to implicate the due process clause because the conditions at the "supermax" facility were far more restrictive than any other form of incarceration in Ohio, including conditions on death row. *Id.* at 224. However, *Wilkinson* is factually distinguishable from the present case. At the "supermax" facility in *Wilkinson*, almost all human contact was prohibited, including conversation from cell to cell; the light was on for 24 hours; exercise was for 1 hour per day, but only in a small indoor room; placement was indefinite and, after an initial 30-day review, was reviewed just annually; and placement disqualified an otherwise eligible inmate for parole consideration. *Id.* at 223-24. In the present case, Plaintiff was transferred to the Baraga Maximum Correctional Facility (AMF) and the Marquette Branch Prison (MBP), both maximum security facilites rather than "supermax" facilities. Plaintiff's security classification is Level V. The MDOC security classifications, from least to most secure, are as follows: Levels I, II, III, IV, V, VI, and segregation. MICH. DEP'T OF CORR., Policy Directive 05.01.130, ¶ B (effective 3/1/04). Thus, Plaintiff is not housed at the MDOC's most secure level. Plaintiff does not allege facts indicating that conditions at either AMF or MBP are nearly as restrictive or onerous as those at the *Wilkinson* "supermax" prison. Because Plaintiff does not have a liberty interest in avoiding placement in a maximum security facility, he fails to state a due process claim with regard to his transfer to AMF and MBP.

Plaintiff's final due process claim concerns the confiscation of two photographs and a variety of religious material. The photographs were returned to Plaintiff, and a formal hearing was held with regard to the confiscated religious material. Due process generally requires notice and a hearing prior to the deprivation of property. *Zinermon v Burch*, 494 U.S. 113, 127 (1990). Where

a pre-deprivation hearing is impractical, a post-deprivation hearing may be constitutionally adequate. *Id.* at 128. A pre-deprivation hearing would have been impractical under the circumstances because of the prison's legitimate penological need to seize contraband or material that threatens prison security immediately upon discovery. *See Pearce v. Sapp*, No. 97-6373, 1999 WL 503568, at *2 (6th Cir. July 9, 1999). The Due Process clause does not guarantee that the procedure afforded will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of . . . property, and even if that decision is erroneous, it does not necessarily follow that the decision violated the individual's right to due process." *Martinez v. Calilfornia*, 444 U.S. 277, 284 n.9 (1980). Therefore, regardless of the correctness of the decision not to return certain confiscated items, the process Plaintiff received was adequate under the Constitution.

### C. Fourth and Eighth Amendments

Plaintiff alleges that the confiscation of his religious materials constitutes a "cruel and unusual seizure." (Compl. at 15, dkt. #1). To the extent Plaintiff is claiming that the search of his cell and the confiscation of personal items violates the Fourth Amendment's prohibition against unreasonable searches and seizures, the claim has no merit. The Fourth Amendment guards "against unreasonable searches and seizures." U.S. Const. Am. IV. The Fourth Amendment, however, applies only when "the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." *Hudson v. Palmer*, 468 U.S. 517, 525 (1984) The Supreme Court has refused to recognize any subjective expectation of privacy that a prisoner might have, even within his own cell. "Privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and

objectives of penal institutions." *Id.* at 526. This is so even when a search is instigated by the false accusations of another inmate. *See id.* at 528-30. Furthermore, inmates are not entitled to the protections against unreasonable seizures of their property which "disserve legitimate institutional interests." *Id.* at 528 n.8. Because the searches and seizures of Plaintiff's property took place within his prison cell, he has no Fourth Amendment claim. *See id.* at 526.

To the extent Plaintiff is claiming that the search of his cell and the confiscation of certain items amounted to cruel and unusual punishment in violation of the Eighth Amendment, the claim likewise has no merit. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain," *id.,* and the pain must be serious. *See Hudson v McMillian*, 503 U.S. 1, 8-9 (1992). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348; *and see Kent v. Johnson,* 821 F.2d 1220, 1229 (6th Cir.1987) (holding that "[t]he Eighth Amendment affords prisoners protection against · · · exposure to egregious physical conditions which deprive them of basic human needs"). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). As Defendants' alleged conduct does not rise to the level of a wanton infliction of serious pain or the deprivation of a basic human need, Plaintiff fails to state an Eighth Amendment claim.

**Disposition**

Having conducted the review now required by the Prison Litigation Reform Act, Plaintiff's complaint will be dismissed against Defendants Hoskins, Maceachern, Crysler, McCloud, Curtin, Louma, Pratt, Luetzow, Ezrow, Jondreau, Chappell, Yankovich, Kowalski, McKenzie, and Caruso for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will order service of Plaintiff's complaint as to the First Amendment claim relating to the confiscation of religious materials on Defendants Wade, Winn, Tremble, Loveless, Obiden and Perttu.

An Order consistent with this Opinion will be entered.


Date:   December 4, 2006         /s/ Robert Holmes Bell
                                 ROBERT HOLMES BELL
                                 CHIEF UNITED STATES DISTRICT JUDGE