UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL ANDREW KITCHEN-BEY,

    Plaintiff,

v.                                                  Case No. 2:06-cv-251
                                                  HON. ROBERT HOLMES BELL

LEROY HOSKINS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael Andrew Kitchen-Bey is presently incarcerated at the Marquette Branch Prison (MBP). In his *pro se* complaint, Plaintiff complains of events that occurred while he was housed at the Oaks Correctional Facility (ECF) and the Baraga Maximum Correctional Facility (AMF). Plaintiff's remaining claim is his First Amendment claim relating to confiscation of his religious materials against defendants ECF Acting Inspector Randy Winn; ECF Resident Unit Officer Roger Wade, Assistant Resident Unit Supervisor Director Thomas Perttu, Sergeant Mathew Obiden, AMF Correctional Officer James Loveless, and AMF Resident Unit Officer John Tremble.

Plaintiff is a practicing Muslim. While Plaintiff was incarcerated at ECF and AMF, plaintiff served as one of the religious leaders of branch temples of the Moorish Science Temple of America. On May 7, 2005, after Plaintiff was placed in temporary administrative segregation at ECF, Defendant Wade searched Plaintiff's cell and confiscated Plaintiff's religious material, delivering the material to Defendant Winn. The religious material included the traditional Holy Qu'ran, the Holy Koran of the Moorish Science Temple of America, notes, research, correspondence

and membership records between the religious leaders at various prisons, and stationary bearing Plaintiff's religious rank. Plaintiff was placed in temporary segregation and issued a Notice of Intent (NOI) after it was allegedly discovered, based upon a tip from an inmate informant, that Plaintiff and other prisoners were conspiring to carry out an armed assault against three ECF prison guards. An administrative hearing regarding the NOI was held on May 11, 2005. The hearing officer dismissed the charges, finding there was no evidence corroborating the allegations. Immediately after the hearing, Plaintiff was transferred to the Ionia Maximum Facility. On May 20, 2005, a "departure" was issued against Plaintiff based upon oral and written accusations that Plaintiff intended to assault prison staff. A "departure" allows prison officials to place a prisoner in maximum security even if the prisoner's security and management levels indicate he can be managed at a lower level facility. As a result of the "departure," Plaintiff was transferred to AMF.

On August 25, 2005, while Plaintiff was housed at AMF, Defendants Tremble, Obiden and Loveless subjected Plaintiff to a strip search and confiscated all of Plaintiff's personal, religious and legal property and all of the furnishings in his cell. Some of the items, including the Holy Koran, were returned to Plaintiff within a few hours. Defendant Perttu held a hearing on September 20, 2005, regarding the remaining items and determined that these items would not be returned to Plaintiff. On March 8, 2006, AMF officials requested that Plaintiff be transferred to a lower level facility. However, another departure was issued against Plaintiff allegedly based upon the same allegations supporting the initial departure. On March 9, 2006, Plaintiff was transferred to MBP.

Defendants move to dismiss Plaintiff's remaining claims. Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving

party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants Winn and Obiden argue that they were not personally involved in the alleged confiscation of religious property. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party

personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims

cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Defendant Winn asserts that Plaintiff's property was never sent to him. The property was packed up in compliance with policy, to facilitate Plaintiff's transfer to segregation. Defendant Winn asserts that he was not involved in removing or holding Plaintiff's personal property. Defendant Obiden asserts that he was not involved in searching or packing Plaintiff's property. Defendant Obiden asserts that he was delivering mail to another prisoner when Plaintiff alleges that his property was confiscated. Defendant Obiden asserts that he does not search prison cells unless assistance is requested and he is required to monitor the general population at meal time and would not have remained in the housing unit. Plaintiff asserts that both defendants were involved. Plaintiff simply believes that Defendant Winn must have received Plaintiff's property and he further maintains that Defendant Obiden was involved in a strip search of Plaintiff, which required Defendant Obiden's involvement in confiscating Plaintiff's property. Plaintiff has not set forth any support for his assertions. Plaintiff has not rebutted Defendant Winn and Obiden's affidavit. Accordingly, it is recommended that Defendants Winn and Obiden be dismissed.

Defendants assert that Plaintiff has failed to set forth a violation of the First Amendment. Plaintiff contends that Defendants violated his First Amendment right to freely practice his religion by confiscating his religious items. Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest." *See*, *for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, Plaintiff's constitutional rights are subject to severe restriction. *See*, *for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials);

*Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25. In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning institutional operations." *Id.* at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90. As stated by the court, this final factor "is not a 'least restrictive alternative' test." *Id.* at 90. "Prison officials need not show that *no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

Plaintiff also claims that Defendants' conduct has violated his rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1. Section 2000cc-1 states:

(a)  General Rule

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

(1)  is in furtherance of a compelling governmental interest; and

(2)  is the least restrictive means of furthering that compelling governmental interest.

This rule applies solely in cases where the "substantial burden is imposed in a program or activity that receives Federal financial assistance," or where the burden affects "commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b).

Plaintiff alleges that ten folders of religious materials belonging to him were confiscated. Defendants assert that Plaintiff's personal property was packed for Plaintiff's transfers and was not confiscated. Nevertheless, it appears that Plaintiff was deprived of personal property which he claims has religious significance for at least a short period of time and that some of his property was never returned to him. Plaintiff asserts that the fact that he may have had a Koran available and could pray and attend religious services did not excuse the deprivation of his religious materials. Plaintiff describes the materials as fundamentally important to his religious practice. Plaintiff asserts that it was his research and notes that were confiscated. Plaintiff argues that without

these materials he could not continue religious studies and investigations and could not conduct additional research to more fully understand his religion.

In the opinion of the undersigned, Plaintiff has failed to show that either his First Amendment rights or rights under the RLUIPA could have been violated by the deprivation of his notes and research. Plaintiff has presented no evidence that his notes and research were necessary to practice his religious beliefs. Contrary to Plaintiff's assertion, the opportunity to attend services, to pray and to have access to a Koran was sufficient under the circumstances to accommodate his religious needs, including his religious studies during his confinement.

Defendants also argue that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

- 9 -

>The Sixth Circuit has observed:
>
>A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983) (police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established.

*Turner*, 119 F.3d at 429.  These are both purely legal questions.  The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights.  *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).  In the opinion of the undersigned, defendants are entitled to the qualified immunity defense because plaintiff has failed to show that his rights were violated by defendants' conduct.

Plaintiff has filed a motion to amend his complaint to add the first names of the defendants, to add a claim under the Religious Land Use and Institutionalized Persons Act, and to add the Michigan Department of Corrections as a defendant.  Leave to amend a complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality."  *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995).  The court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile.  *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1354 (1996).  Plaintiff's proposed amendments are unnecessary or futile.  The first names of Defendants are not necessary at this time because the proper Defendants have responded to the complaint.  The court has considered a RLUIPA claim in this analysis because it was apparent from the pleadings that Plaintiff wanted to assert such a claim. The Michigan Department of Corrections (MDOC) is not a proper Defendant and adding the MDOC would be futile.  Therefore, it is recommended that Plaintiff's motion to amend complaint be denied.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment.  Accordingly, it is recommended that Defendants' motion for summary judgment (Docket #25) be granted and this case

be dismissed in its entirety. It is further recommended that Plaintiff's motion to amend the complaint (Docket #37) be denied and Plaintiff's motion to waive the requirement to file additional copies of selected exhibits (Docket #42) be granted.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   January 2, 2008